v. José López-Diaz and 132118 United States v. Carlos López-Diaz. Good morning. Good morning, Your Honors. John Henry Cunio on behalf of José López-Diaz. I'd like to start, if I could, with, well, as Your Honors are no doubt aware, Mr. José López-Diaz was convicted of 34 counts, one being conspiracy. I believe it was 19 counts that were substantive offenses, and then 31 to 35, which related to aiding and abetting his brother Carlos and he aiding and abetting each other. And that they, this is the aggravated counts. It is our position that as a sentencing enhancer, it needed to be that the conduct charged with respect to the individuals named, and there were, I believe, five named people, needed to be also proved in the substantive counts. But none of the people who related to those counts were named in the substantive counts. You mean, when you say proved, you're not saying simply proved like any element of a crime. You're saying it had to have been the subject of a separate finding? That's correct. Otherwise, I'm sorry, Your Honor. Is that your argument? Yes. Otherwise, you're collapsing two different. Why wouldn't that apply to all the elements? You know, it isn't the usual way that it's done is a crime has multiple elements, including an aggravating element, and there's one guilty or not guilty checkmark on the verdict form, but the jury is told in the instructions they have to find all of those elements, including the aggravating element. Well, they have to be, one of the elements is that they have to be, in our view, has to require a conviction on the underlying statute, which is the health care fraud. And there, as to those individuals, there was no conviction. There couldn't be. They weren't charged. In fact, right in the indictment, it specifically says that the government says that as to the Section 1347 violations, they were, quote unquote, not charged herein. So in our view, that these enhancements were null, as we put it in the brief ab initio. And what language do you hinge your argument on in the statute to say that you actually require a separate freestanding conviction rather than a jury finding that includes that as an element? Well, because it's an enhancing statute, Judge. I think that if you're going to enhance, you have to have first a conviction, and then is there a question of the enhancement? And that is not present here. The government cites to the court United States v. Stepanian, which was also an aggravated identity theft case, however, rising out of a guilty plea to both the aggravated identity theft and also to the, that there was a conspiracy to commit access device fraud. And in that, I mean, the defendant in that case said that there could not be a conviction for the aggravated identity theft because there was no basis for the in relation to aspect of the offense. This court in footnote 15 said that, well, he pleaded guilty, so therefore he admitted all the elements. But in any event, this court made and said we find the government's analogy to a 924C conviction where the person is acquitted of the substantive offense to be persuasive. And citing United States v. Figueroa, and I suggest, Judge, that that in Figueroa, Mr. Figueroa was arrested with cracked vials, $108, and a loaded .38 caliber revolver. He was acquitted of the drug offenses, and this court upheld the 924C conviction. But I suggest that it's a very different case because in that case, in Figueroa, first of all, it's in a footnote. I'm not sure that it's controlling precedent, but even if it is, in that case, the conduct, that is, there was a drug offense for which his co-defendant was convicted. In other words, it arose out of the same set of facts. So the court said that he could be aiding and abetting that offense even if he's not guilty of that offense. That is exactly what's the problem here, that there's two separate sets of facts. They may have been alleging similar conduct, but they're separate sets of facts. This is not a situation where the enhancing statute is arising out of the same set of facts, and that's what we think is fatally defective with respect to counts 31 to 35. I'd like to also discuss what is our argument three, and that's based upon the Rosemond v. United States decision by the Supreme Court last year in which the court said that a defendant must have knowledge of all elements of the offense prior to the crime being committed. This is particularly important with respect to counts 31 to 35, but also with respect to counts 2 to 3, 10 to 19, and I believe it's 21, where the allegation is that services were provided to deceased persons. And I suggest that based on Rosemond, there needed to be an instruction and a finding by the jury that Jose Lopez Diaz knew in advance that the people who were deceased. Now, you would say, well, if they're claiming they gave it to deceased persons, what sense does that make? Because of this, the evidence was clear that the protocol that existed between the brothers was that for individuals who had been given dental services by Carlos, those names were then given to my client. So the evidence was clear that they weren't claiming that they were giving services to deceased persons. It seems clear that some people were receiving dental services from Carlos and using the names and presumably the insurance information of deceased persons. But therefore, there is absolutely no evidence that my client knew or could have known that, in fact, the billing was being paid to the people who were deceased. And as an aider and abetter, he had to know that in advance. The government responds by saying, well, if you look at the instruction that was given to the jury, the instruction says that he had to know of the intent. However, that knowledge is, there's no temporal aspect in that jury instruction. That is, that the knowledge had to be prior. They had to know. The Supreme Court says that if somebody, an aider and abetter has to know in advance because they can be given the opportunity to walk away. Now, whatever the jury may have found with respect to Mr. Jose Lopez Diaz's claim of conduct with respect to other counts, it is reasonable to assume that somebody would want to know that the clients or the patients who were being, for whom services were being billed were, in fact, deceased. And there is absolutely no evidence here that such prior knowledge existed. Wasn't there identity theft whether or not the person was deceased? There has to be, that could very well be, Jones, but there has to be knowledge that the person was deceased because that's what the government charged. No, there simply needed to be knowledge of the health care fraud or aggravated identity. That's what was charged. That the defendant consciously shared that other person's knowledge, the other person who committed the health care or aggravated identity theft, shared that person's knowledge, intended to help, and took part in the endeavor. It doesn't specify the many means of aggravated identity fraud that actually were the mechanisms of fraud in this case. Death was only one of them. Did the instruction have to specify every particular means? Well, I would suggest that given Rosemond that he would have to know that it should have been so instructed because he should have, he had, the government had the burden of proving beyond a reasonable doubt that he had, that he had knowledge of the circumstances of the fraud in advance, and they did not, so, they were not so instructed. Good morning, Your Honors. H. Manuel Hernandez on behalf of Carlos Lopez-Diaz. I want to focus primarily, as best I can this morning, on the sufficiency of the evidence, which is my main argument in this appeal. He was, Carlos Lopez was convicted, as the Court knows, of count one, the conspiracy, and of the aggravated theft counts 31 to 35, but acquitted of the basic health care fraud. What specifically, what element of the crime do you say there was an insufficient basis in the record to establish it? There was no evidence, Your Honor, and I tried the case, there was no evidence, and I'll go through the points, Your Honor, whatsoever that Carlos Lopez had any idea of what Jose Lopez was doing in this building. They have common staff who talk to each other, who are transferring Carlos' client information to Jose, and Jose is then making false health care claims. That's the government's theory. The two men are brothers. They eat lunch together all the time. There is some indication that each had information about this transfer mechanism. What transfer mechanism? I don't understand that, Your Honor. The hiring of employees at a dollar a form to transfer the information from Carlos to Jose, where Jose can use it for improper building. Okay. Okay, so what's the lack of evidence? Well, Your Honor, it's interesting because being brothers obviously is not a crime, and that's basically the government's theory, guilt by association and the fact that they were brothers, so he had to know. There was no evidence. In fact, there was clear evidence that Carlos had no information about what Jose was doing. The individuals who filled out those forms, Nayir Rodriguez and Leslie Williams, I believe were the two individuals, both testified quite clearly, and I asked the court to please go and review their testimony, that they never discussed with Carlos Lopez what was being put on those form 1500s or what they were even doing for Jose. In fact, Nayir worked for him several months, worked for Jose several months before she even began to work for Carlos Lopez. The testimony of the government's own witness, the first witness on the stone, was that the process of billing dental billings was much different than a physician on these 1500 forms. The dental billing was done on a computer program where you typed it in. It had nothing to do with the 1500 forms. What was the reason for your client giving the forms to the brother? There was a protocol. There was evidence of a protocol, and I would urge the court, you'll search and date. And if the evidence suggested that there was a rational basis for a jury to believe that that claim protocol was a pretext, in other words, if, well, I mean, I'm trying to understand your argument, so if the evidence suggested that a jury rationally could conclude that that was a pretext, what would that do for your sufficiency challenge? First I don't think that the... I understand that, but what if one thought it did? The protocol was based... the indictment did not charge the protocol. The government can't change theories midstream. That's a different argument. I'm sorry? That's a different argument. Get to the sufficiency. The indictment charged them with the basic fraud... No, I understand, but what I was... it's simple, which is, you say, I understand the argument, that your client didn't know what the other brother was up to. Yes. Okay? In transferring the information. And that was the overall... I got it. I got it. So the next question is, okay, why is your client transferring this information to the brother? You say, because it was a protocol. And my question is, if one thought that the evidence suggested that that protocol was not being followed and it was pretextual, I understand you think that the evidence doesn't show that, but if one thought the evidence supported that, what would that do to your sufficiency argument? But otherwise, could a jury rationally conclude that's odd to be giving this information for no good reason to the brother? The jury would have to be inference upon inference and engaging in pure conjecture to reach that... So even if it was pretextual, you think it would not be sufficient? Even for willful blindness theory? There were no... there was no evidence for willful blindness to apply, there had to be some flags of fraud. There was none. There was no evidence. Why isn't this a flag? Why is my brother asking me to hand over all this health care information when he doesn't seem to be using it to do any medical investigation? Well, again, that's an assumption that certainly... I'm saying, if the evidence suggested that the protocol wasn't being followed, why wouldn't that support a willful blindness theory? There was... The only way I can answer is by going over the evidence. The evidence was that Carlos had a patient who almost died, his first patient, when he started this mobile clinic. This mobile clinic was designed to help these people who were not getting any type of treatment. The first one almost died on him. He panicked or it shook him to the core. He went to his brother, who was an emergency room physician, and his brother came up with this protocol. You may not like the protocol. What is the protocol? The protocol was that he was supposed to be available as an independent consultant. I believe that in the beginning, the protocol may have expected that he was going to be more involved in terms of seeing patients, but it evolved into basically him coming up with the dental assistants having required to take the vital signs. And Joelle Figueroa, who was one of those dental assistants, testified that there were several patients that they did not treat based on this protocol, because the vital signs showed that they were not up to, their health was not sufficient. But does the evidence show that your client never treated someone until the vital signs were taken? I thought the evidence suggested that the information was being passed from your client to the brother, whether or not vital signs were actually taken, so it would just be post-talk that he would get them. The first thing that was done was the dental assistants would take the vital signs based on the instructions of Dr. Lopez, who came up with this particular protocol. Based on those vital signs, they had information as to when the patient could be treated or not treated. He was then available as a consultant if there was any questions. There was testimony by Joelle Rodriguez that they talked constantly that he would go there for lunches. Your Honor, Judge Lynch, you talked about this business that Carlos Lopez knew or was involved somehow in paying that $1 for the fact that Nayir and Leslie Williams filled out these 1500 forms. There was no such evidence, and I asked the court to order the government, because when you read their brief, they say that. If you read Judge Bessosa's denial of my Rule 29, he says it. There's no citation to the record. There was no such evidence. What there was evidence was Joelle Rodriguez testified that for the vital signs, they were paid $1 per patient, and sometimes when Judge Jose Lopez couldn't make it, Carlos would pay for that $1 to take the vital signs. There was never any evidence or any witness who testified that Carlos Lopez knew anything about the 1500 forms or paid for those 1500 forms. Quite the contrary. Every witness testified. When they were doing those forms, they did it at Jose Lopez's office or they did it at their home, and I specifically asked each witness, did you ever talk to Carlos Lopez about those forms? Each one testified, no. Let me make sure I'm understanding this. This is your client's records of his patients we're talking about. Yes, Your Honor. And as I understand, for a two-year period of time, your client's employees made those medical records, those dental records, available to the brother or his assistants to transfer information from those forms to something else. He made the files available to Dr. Lopez, who was a physician, as part of the protocol. Dr. Lopez, and there was evidence, he would go and he would initial every time he reviewed a file, and there was testimony how this worked. He would go to visit them, and these were, as you go to a dentist, you don't go to a dentist once, you go back for other appointments. If he's giving, the record does show that your client knew that Jose was getting access to all of Carlos' records. Yes, as part of the protocol. Okay. And couldn't the jury find, well, there must be some reason for that, and we've been given the protocol as an explanation, but when we look over a two-year period of time, we see maybe, what, one or two instances where Jose actually even saw a patient, or even looked at the records prior to the treatment. So why couldn't they then say there must have been another reason? I would, you know, the law is, Your Honor, on Rule 29, that if there are equal theories that the, if this court, in review, on appeal, if there are equal theories where a jury, a rational jury, could find either guilt or innocence, that this court is required to reverse. That would be my answer to that question. You can argue that a rational jury might be able to reach that. Based on the overwhelming evidence, there was nothing that showed that Carlos Lopez knew what his brother, and the outrageous conduct that Jose Lopez was engaged in, the type of billing, the amounts of money, and again, he didn't make a dime. The mother's milk of fraud is profit. That's why people engage in fraud. I know that the government didn't have to prove profit, but it's certainly an indication of that Carlos Lopez had no involvement, or was not normally involved in the conspiracy. So based on my arguments this morning and with my brief, I would respectfully ask the court to take a hard look at this and reverse Mr. Carlos Lopez's conviction. Thank you, Your Honor. Mr. Matthews. Good morning, Your Honors. John Matthews on behalf of the United States. I'd like to pick up from where my brother, counsel, left off regarding the sufficiency of the elements with respect to Dr. Carlos Lopez. In this case, as Your Honors noted, this was not a case where it was mere association. Dr. Carlos Lopez was not convicted because he's Dr. Jose Lopez Diaz's brother. He was convicted because he was providing his patient's files on a continuous basis to his brother, even though his brother did not provide any medical services. The evidence showed that Dr. Jose Lopez Diaz did not provide any medical services. One of the witnesses, Joel Figueroa, who my brother, counsel, referenced, he said in a period of over hundreds of visits to homes and schools that Dr. Jose Lopez Diaz never appeared at any of these visits, never provided any services to these patients. Dr. Carlos Lopez Diaz provided his patients personal information after he provided dental services. Therefore, this idea of protocol where the purpose of Dr. Jose Lopez Diaz was to prevent some kind of emergency, it doesn't make any sense. And a reasonable jury could find that there was no protocol because these files were provided after the dental services were provided and Dr. Carlos Lopez Diaz left these homes. In addition to that, Dr. Carlos Lopez Diaz knew the assistants. They had overlapping assistants that were doing work for both Dr. Jose Lopez Diaz as well as Dr. Carlos Lopez Diaz. Dr. Carlos Lopez Diaz knew that these assistants were being paid $1 per information, whether we're talking about vital signs or the personal identifiable information. He knew that these... Which is it? Counsel just told us that all the record shows is they were paid $1 to take the vital signs prior to treatment. And your brief tells us they were paid $1 to transfer information from one record to another. Well, the government's understanding is that based on the testimony, these assistants were being paid... There is testimony that they're being paid $1 per vital sign, but there's also... To take the vital sign prior to treatment. To... Our understanding is to provide the paperwork of the vital signs to Dr. Jose Lopez Diaz. So... So there's ambiguous evidence. Right. And the jury could have concluded the dollar payment was actually to transfer the information... Right. ...from Carlos' office to Jose's office. Exactly, Your Honor, because as stated previously... What is that evidence? The evidence is that, well, there is testimony that, for example, Dr. Jose Lopez Diaz was paying $1 per patient, identifiable information, on his side. So when we're coming to the billing aspect, Dr. Jose Lopez Diaz was paying $1 per patient. Now, the government's understanding is that there was testimony that when Dr. Jose Lopez Diaz was not available to pay these assistants, that Dr. Carlos Lopez Diaz would step in and pay them $1 for this information. You know, this is not paying $1 per vital sign prior to determining some medical emergency. This is after the fact and providing, you know, payment for the assistants' help in filling out this information. And we think that the government's position is that there was, as Your Honor stated, plenty of information that there was a conspiracy here, that Dr. Carlos Lopez Diaz was actually providing dental services. And he was providing a necessary service for people that otherwise couldn't get service, elderly people that were in homes, people in schools. Can you help us a little more? Then you briefed it on where we should find in the record that the dollar was not to record the vital signs, but was to actually transfer information. Which witness? Without knowing the exact transcript page, I'm happy to provide, you know, additional  But our understanding is that... All right. Within three days after oral argument, we expect a letter from you detailing where that information is in the record. And within five days, your opponent can make a filing on the same point or the absence of such a record citation. Certainly, Your Honor. So the stories you've told us so far is he knows, Carlos knows that his brother's getting access to the files. And he knows that the dollar is being paid to transfer some information. And he knows his brother isn't treating any of his patients. That's correct, Your Honor. So that gets me to the point that he knows something squirrelly is going on here, that his brother's maybe doing something he shouldn't be doing. Where do we get from that to he knows enough that he's actually committing health care fraud as opposed to some other scam marketing thing to all these patients or selling their identities on the Internet or who knows what else he's doing? Where do you get that last link of knowledge? Your Honor, it's the government's position that due to the fact that Dr. Carlos Lopez-Diaz is a dentist, he's a medical professional, he has assistants that are filling in his own billing information. And there's evidence in the record that he also participated in that process. So, for example, the assistant wouldn't always fill in all the codes. Dr. Carlos Lopez-Diaz was familiar with dental codes and familiar with the billing process. And the government's position is that there could be no other reason for providing this patient, you know, my brother comes to reference the protocol. There was no protocol. So the fact he wasn't providing his patient. But I assume we don't believe the protocol. So we think there's something nefarious going on. You've got me there. Yeah. How do you get me that last step, particularly where there's like, what, $700,000 of money goes to Jose and there's no evidence at all that a penny of that went to Carlos? So how do I know Carlos knew beyond a – how do I find beyond a reasonable doubt that Carlos knew this specific crime was being committed? Your Honor, it's the government's position that the evidence, the totality of the evidence with all the witnesses and the fact that they're both doctors, the fact that they're sharing assistance and that the assistants were coming to pick up these files, we believe that it could be for no other reason than for Dr. Jose Lopez-Diaz to bill these patients. As I understand it, there are different billing forms and mechanisms depending on whether Carlos is seeking reimbursement. And then different from the forms that Jose would fill out, the 1,500 forms? That's correct, Your Honor. Okay. Is there any evidence that the 1,500 forms were actually filled in in the presence of while that activity was going on? To my knowledge, there is no evidence that Dr. Carlos Lopez-Diaz was present with Dr. Jose Lopez-Diaz when he was filling out the 1,500 forms or that he – there's no direct conversations that Dr. Carlos Lopez-Diaz is having with Dr. Jose Lopez-Diaz regarding the specific content of the forms. So for example, looking at the 1,500 form and saying this is information that should be filled out in the form. Okay. Then the next question. So why is Carlos doing this? What's the government's theory if he's not gaining anything? Well, the government's position is that he's not necessarily gaining anything. He may not be making the same amount of money based on the record that Dr. Jose Lopez-Diaz is making, but it is his brother. So he's helping out his brother, a close family member. They have – Make $700,000 and he doesn't get a penny of it. Well, based on the record. Well, that's actually what we do. We base things on the record. Yes, Your Honor. Our position is that Dr. Carlos Lopez-Diaz certainly is less culpable in this matter than Dr. Jose Lopez-Diaz in part because, like I said, he was providing a valuable service. He was going – I guess I'm stuck on Judge Coyote's question about what makes this related to health care fraud with respect to Carlos. So I understand if one has doubts about the legitimacy of the protocol, that there would be a pretty good case for saying he's handing over patient records for no good reason and he's not supposed to do that. But there could be lots of bad reasons that someone could want patient records for. How do we know it's for this health care fraud reason? I think in this particular case, the fact that the assistants, both Leslie Williams as well as Nahir Rodriguez, I believe, the fact that they worked for both doctors for billing purposes and the fact that the assistants would be – their testimony that they would be at Dr. Jose Lopez-Diaz's office and see the exact same forms, the exact same dental logo from Dr. Carlos Lopez-Diaz's office, and the fact that, as John has stated, they're brothers, they have lunch. Often the assistants speak to each other and work together. Was it necessary – this case was charged as health care fraud or aggravated identity theft. Was it necessary that he know it was health care fraud in addition to aggravated identity theft? Nahir, well, it depends on for which count. For the conspiracy count for Dr. Carlos Lopez-Diaz, there just needed to be an agreement to commit health care fraud. With respect to the aggravated identity theft, there just needed to be sufficient evidence that there was a conspiracy to commit health care fraud and that he was knowingly giving over someone else's information. You haven't understood my question, which is that the prior questioning assumed that the jury verdict turned on knowledge, prior knowledge of health care fraud. But the instruction says, or aggravated identity theft, there is an argument that once the patient's information is used for whatever purpose by the brothers that is an illegitimate purpose, that the crime is committed. That's correct, Your Honor. I thought that the aggravated identity theft was in connection with health care fraud. Is that wrong? No, that is right. That's correct. So doesn't that mean that it's aggravated identity theft in connection with health care fraud? What knowledge does Carlos have to have of the health care fraud or the aggravated identity theft to be in connection with health care fraud? Well, Dr. Carlos Lopez-Diaz has to know that there is a scheme to defraud. So he has to know the health care fraud? Yes, Your Honor. Yeah, okay. So I guess we're just back to your argument that Carlos knows about the health care fraud is contingent on the interrelationship between the staff members. That's the whole, and I guess in the whole context of the thing. No, no, not just the staff members, everything, the totality, the relationship between Dr. Carlos Lopez-Diaz, the fact that they discuss a protocol but Dr. Jose Lopez-Diaz isn't performing any medical services to these patients. So you're saying if Carlos had taken the stand and testified, look, we had no protocol, I knew Jose was taking all this information from my files, and I knew he was probably committing some crime or some bad thing of some type, as I understand your evidence, he could be convicted of conspiracy for whatever it was that Jose was doing. I'm sorry, Your Honor, can you repeat the question? Sure. I'm granting you that you can get us all the way to as if Carlos had said he knew that something wrong was going on here. But I see your evidence as saying that's all we need to find, is that a jury could then hold him liable under the conspiracy count for whatever it was that his brother was doing, even if we don't specifically find that he knew that it was that type of crime. No, no, Your Honor, in this particular case, we say that there's sufficient evidence that he knew that there was conspiracy to commit health care fraud, not just any particular crime, and that's given the fact that they're both medical professionals and they're both these assistants, their purpose, these particular assistants, their purpose is for billing, for filling out billing forms to submit to get paid. I see. The particular staff members, their only function is form filling for billing? Well, it depends on which staff member, but there was testimony from at least two staff members that that was their purpose for billing, for both Dr. Carlos Lopez-Diaz, for Dr. Jose Lopez-Diaz, for Dr. Villamil, the wife. So that's the government's position. Suppose Jose had been contacting all these dental patients, using this information that he got regarding their address, social security number, and everything, to market some scam medical services and stuff like that. Would Carlos be on the hook for that? Well, You'd just say, well, he must have known. Well, he would be on the hook for the aggravated identity theft. I thought the aggravated count, maybe I'm just not understanding this. What's aggravated about the account as opposed to just being identity theft? I thought it was aggravated because it was in connection with health care fraud. Yes, that's correct. So he would not be, in the example you just gave, he would not be on the hook for the aggravated identity theft for marketing scams because that's not health care fraud. Right, but my understanding is that he was proposing a different hypothetical, like a different case. I see. But yes, you're correct. He's on the hook for aggregated identity theft in connection with X. In connection with health care fraud. Well, it seems to me you're saying in connection with X. We don't need to know. He doesn't need to know what the X is. Or the jury thinks it's either willful blindness or he reasonably should have known, given the nature of the businesses, it's health care fraud. That's correct, Your Honor. And that's why the assistance. Which of these two are you saying, just so I understand it? Okay, one is he's on the hook for knowledge of X. So it would be any bad thing. The other is he's on the hook for knowledge of health care fraud. What did you charge him with? I thought it was just in connection with health care fraud. Yes, that's correct. Okay, and is the theory of that, that so long as health care fraud was going on, he's on the hook for it, whether or not he knew that was going on, or is the theory that you have to prove that he's on the hook for that because he knew or was willfully blind with respect to handing the forms over for health care fraud? Yes, it was because he knew or was willfully blind with respect to health care fraud. Okay, so there's got to be some evidence of a tie to health care fraud for him to be guilty of this count, on the government's theory. Or as Your Honor stated, willful blindness. So all the factors that were noted. With respect to health care fraud in particular.  Anything else, counsel? If there are no further questions, the government will rest on its brief, and I'll provide you with the information that was requested within three days. I do have one. The thing that just yells out at me about this file is the $700,000. Is there anything in the record that would suggest where this money went or why this? It just seems, Carlos, for two years, if your theory is correct, for him not to benefit in some way screams out for some explanation, and yet I don't find one in the record. Your Honor, the government's unaware of a specific explanation based on the record, but we submit that the fact that they're brothers and they're family members, and, for example, in this case. Why didn't the government provide such information? It surely was available. The government's apologies for not providing that information. Did you indict this case? No, Your Honor. You were not trial counsel? No, Your Honor. In fact, the lead attorney on the case passed away after the trial. Okay. Thank you. Thank you, Your Honor.